GEORGE A. WIGGIN *vs.* EDWARD S. GOODWIN.

*Effect of sale by one partner to another. Contract varied by subsequent parol agreement.*

Where one member of a firm, at its dissolution, sold all his interest in the property and accounts of the firm to his partner, who gave his note therefor, the defendant in a suit upon the note by the payee, cannot set off against such note, an account due from the plaintiff to the firm at its dissolution.

A written agreement may be waived, varied or annulled by a subsequent oral agreement of the parties.

In case of a mistake in the drafting of a contract, if the parties subsequently settled upon the basis of the contract as it should have been written, and a promise is made to pay or allow the balance thus found due, such promise will be enforced.

ON REPORT.

ASSUMPSIT upon a note dated February 21, 1871, for $800, given to the plaintiff by the defendant in payment for the former's interest in the assets of a partnership previously existing between them. The defendant filed a small note of the plaintiff, and an account, in set-off. The plaintiff, after reading the note in suit, admitted his liability for the $75 note filed in set-off and $60.40 of the account, and rested his case.

The defendant introduced the agreement of February 21, 1871, between the parties, fully copied into the opinion, and then proposed to show by the scrivener who wrote it, that he asked Wiggin what he meant by the words "personal account" as there used, and Wiggin replied, "our dealings in the ladder business." This testimony was excluded, as well as that offered to prove by parol that

the writing was only part of the agreement, and that it was further agreed that whatever balance was found due from Wiggin to the firm of Wiggin & Goodwin should be paid Goodwin or deducted out of this note.

The court also refused to permit the defendant to show that, subsequently to the delivery of the agreement, it was arranged that the parties should meet and settle the amount which each party owed the copartnership at the time of its dissolution, and that such balance (if any) as was found against Wiggin he should pay Goodwin, or allow it upon this note; and that afterwards, on the first day of March, 1871, the parties did meet, examine and adjust their partnership account; that it was found that Goodwin owed the firm, at its dissolution, $157 and that Wiggin then owed it $776; and that the balance ($619) due from him Wiggin agreed to pay Goodwin, or to allow it upon the note in suit; and that Wiggin afterwards stated to the scrivener that he had been down to settle with Goodwin and found his bill was about as large as the note. After the exclusion of the proof of these facts sought to be set up in defence, the defendant consented to a default, to be taken off and the cause to stand for trial if any part of the testimony offered by him and excluded was legally admissible.

*Wm. J. Copeland*, for the defendant.

*George C. Yeaton*, for the plaintiff.

APPLETON, C. J. The plaintiff and defendant were partners. The plaintiff sold out his interest in the partnership by a contract in the following terms:

"This certifies that I, George A. Wiggin, have this day sold unto Edward S. Goodwin, my former partner in the ladder business, all my right and title in said business, and do hereby sell and relinquish all my claim upon all the property, both real and personal, heretofore owned by the firm of Wiggin & Goodwin. Also all accounts now due said firm. In consideration of the sum of eight hundred dollars ($800) paid to me by said Edward S. Good-

win, receipt whereof I do hereby acknowledge. It is understood that the personal accounts now existing between myself and the said Edward S. Goodwin are not included in this agreement.

Signed at South Berwick, Maine, this twenty-first day of February, A. D., eighteen hundred and seventy-one.

Witness, H. A. STONE. GEORGE A. WIGGIN."

This paper was duly stamped.

The note in suit is the one then given for the sum of $800 and referred to in the above agreement.

The sale by the plaintiff to the defendant was a dissolution of the partnership. The interest of a partner in the estate of a solvent firm is the share to which he would be entitled in the final adjustment of its affairs. His interest would be what would remain after deducting the amount he might owe the firm. The sale to the defendant amounted to a liquidation of the affairs of the partnership. The claim of the firm must be regarded as extinguished. *Lesure* v. *Norris*, 11 Cush., 328.

There is no ambiguity, either latent or patent, in the transfer made by the plaintiff of his interest in the partnership. The personal accounts existing between him and said Goodwin exclude partnership accounts due from him to the firm. The phrase relates only to accounts between them as individuals. The evidence to show what the scrivener meant by personal accounts was properly excluded.

The defendant offered to show that, subsequently to the delivery of the note and contract, it was agreed that the parties should meet and settle the amount each owed the partnership at the time of its dissolution; and that the balance against the plaintiff, if any should be found, should be allowed the defendant on this note, or be paid him; that they did meet on March 1, 1871, and adjusted their copartnership accounts, and it was found that Goodwin owed the firm, at the time of its dissolution, $157; that Wiggin then owed it $776; that the balance was found to be $619, which Wiggin agreed to pay or allow on the note in suit. This testimony the court excluded.

This evidence was of an agreement subsequent to the date of the assignment of the plaintiff's interest in the firm. "The rule, that parol evidence is not to be received to vary a written instrument," observes Shepley, J., in *Marshall* v. *Baker*, 19 Maine, 405, "excludes all previous and contemporaneous declarations, but it does not exclude independent and collateral agreements made after the contract is completed, whether on the same occasion or at a subsequent time. Such testimony is not used to vary the terms of a written contract, but to prove, that it has become inoperative by reason of a subsequent and independent one." In *Goss* v. *Lord Nugent*, 5 Barn. and Ad., 65, Lord Denman states the law on this subject thus : "After the agreement has been reduced into writing, it is competent to the parties, at any time before breach of it, by a new contract not in writing, either altogether to waive, dissolve, or annul the former agreement, or in any measure to add to, or subtract from, or vary or qualify, the terms of it, and thus to make a new contract ; which is to be proved partly by the written agreement, and partly by the subsequent verbal terms engrafted upon what will thus be left of the written agreement." If the parties for reasons satisfactory to themselves modify their original agreement, they have a perfect right to do it, and when done it is not readily perceived why proof of such modification should not be received.

This evidence was admissible upon another ground. It was urged that there was a mistake in the assignment as originally drafted ; that it failed to truly represent the actual contract, as made and understood. If there was a material mistake, and it was fully established, a court of equity would reform the contract in which the mistake existed. If a mistake may be rectified and the instrument reformed by a court of equity, much more may it be done by the parties. If done by them, it is equally valid as if done in pursuance of a decree in chancery. The evidence offered tends to show that the defendant was entitled to an allowance as claimed ; that the plaintiff admitted that fact ; that a settlement was made of the affairs of the partnership accordingly ; that a bal-

ance was found due the defendant; that the defendant promised to allow such balance upon the demand in suit. If the defendant can prove all this, he should be permitted to do it. The demands of justice require it. *Default off. Case to stand for trial.*

WALTON, DICKERSON, BARROWS, DANFORTH and VIRGIN, JJ., concurred.